IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02498-REB-MEH

GIOVANNI LARATTA,

      Plaintiff,

v.

ARISTEDES W. ZAVARAS,
ROBERT ALLEN,
CHRIS BARR, and
SUSAN JONES,

      Defendant.

---

## RECOMMENDATIONS ON MOTION TO DISMISS AND MOTION TO AMEND

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court are Defendant's Motion to Dismiss [filed January 25, 2010; docket #16] and Plaintiff's Motion for Leave to File Amended Complaint [May 6, 2010; docket #40]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motions have been referred to this Court for recommendation, and the matters are now fully briefed. The Court recommends that, for the reasons that follow, Defendant's motion be **granted in part and denied in part** and Plaintiff's motion be **granted in part and denied in part** as set forth herein.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v.*

## BACKGROUND

Plaintiff, Giovanni Laratta, is a prisoner in Colorado who filed a *pro se* civil rights Complaint on October 23, 2009, alleging First, Fifth and Fourteenth Amendment violations against Defendants for confiscating and/or destroying his incoming mail. Upon initial review, Judge Weinshienk found that Plaintiff failed to state due process claims for deprivation of his personal property. Accordingly, Judge Weinshienk dismissed the Fifth and Fourteenth Amendment due process claims against all Defendants. Thus, the only remaining claims in this action are Plaintiff's First Amendment claims against the named Defendants. Through this action, Plaintiff seeks injunctive relief, compensatory damages and punitive damages against Defendants for violations of the First Amendment.

Essentially, Plaintiff alleges that on or about December 10, 2008, while he was confined at the Colorado State Penitentiary, he received a notice from the facility mailroom that an envelope containing photographs sent by his father had been "rejected" and were being routed to the facility's "reading committee." Docket #1 at 6. Plaintiff later learned that the photographs had been destroyed. *Id.* Upon completion of the grievance process, the CDOC found that the photographs were destroyed without allowing the Plaintiff the opportunity to respond to the notice and reimbursed the Plaintiff $1.00 for each of the eight "commercial" photographs destroyed. *Id.* at 11-12. Plaintiff alleges that the envelope contained 40 photographs of his family that were not from a commercial vendor.

In addition, Plaintiff alleges that on February 17, 2009, he received another notice from the mailroom that a calendar from "Unity Calendars" had been rejected as "contraband." Docket #1 at 6-7. Plaintiff contends that, although he submitted the necessary paperwork to respond to the notice, the calendar was destroyed on March 3, 2009. *Id.* at 7.

---

*Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Finally, Plaintiff alleges that on or about December 1, 2008, he received a notice from the mailroom informing him that materials for a paralegal correspondence course were rejected pursuant to the "Implementation Adjustment 300-38, Section IV.7." Docket #1 at 15. In response to his informal grievance concerning the denial of his paralegal course materials, photographs and calendar, Plaintiff contends he was informed that Warden Jones applied Administrative Regulation 850-6 to the rejections stating that "pictures and calendars from vendors" were to be purchased only from the prison canteen. *Id.* at 16. Plaintiff contends that Defendant Jones "includes the denial of educational correspondence solely for behavioral purpose." *Id.* at 17.

Defendants Zavares, Allen and Jones filed the within Motion to Dismiss in response to the Plaintiff's Complaint.[2] Defendants assert several defenses to Plaintiff's claims: (1) to the extent that Plaintiff brings his claims against them in their official capacities, they are entitled to Eleventh Amendment immunity from suit, (2) to the extent that Plaintiff brings his claims against them in their individual capacities, they are entitled to qualified immunity, (3) Plaintiff has failed to allege their personal participation in the challenged conduct, and (4) Plaintiff has failed to state a claim for compensatory damages. *See* docket #16.

In response, Plaintiff contends first that while he "<u>does</u> <u>not</u> assert [in the Complaint] that he is suing Defendants in their official capacities," the entire case would not otherwise be dismissed pursuant to the Eleventh Amendment because he brings claims against Defendants in their personal capacities. Docket #33 at 3-5. Second, Plaintiff asserts that his allegations demonstrate Defendants were personally responsible as follows: Associate Warden Allen became aware through the Step 2 grievance process of Chris Barr's mailroom "violations" and failed to remedy them; Director Zavares, through an "order of the Executive Director," admitted that the photographs were destroyed

---

[2]The remaining Defendant, Chris Barr, filed an Answer to the Complaint.

without Plaintiff's response through the proper procedure, but failed to remedy the wrong; and Warden Jones created an unconstitutional custom or practice by applying Administration Regulation 850-6 to justify the confiscation and destruction of his photographs, calendars and educational materials. *Id.* at 5-9. Furthermore, the Plaintiff cites numerous cases for the proposition that the PLRA does not necessarily bar his claim for compensatory damages, which includes more than claims for mental and emotional injuries, including damages for loss of personal property. *Id.* at 9-13.

On May 6, 2010, the Plaintiff filed a Motion for Leave to Amend Complaint seeking to add a First Amendment claim against an additional Defendant, Jim Brown. The proposed First Amended Complaint includes the new claim and defendant, re-asserts the same First Amendment claims against the original Defendants and adds claims for violation of Plaintiff's right to petition the government for redress of grievances against the original Defendants. The Defendants respond that the amended claims against Defendants Zavares, Allen, Barr and Jones are futile for failure to establish personal participation and because they fail to state a claim for relief.

Because a court may grant a plaintiff leave to amend if it finds that the operative pleading fails to state a claim for relief, *see Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001), the Court here will first analyze Defendant's motion to dismiss and, once determined, will proceed to adjudicate the Plaintiff's motion for leave to amend.

## MOTION TO DISMISS

While Defendants state in the introduction of their motion that they assert their defenses pursuant to Fed. R. Civ. P. 12(b)(1), the Court notes that Defendants also assert in the content of the motion that Plaintiff fails to state claims for relief pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, the Court will analyze the motion pursuant to both rules.

# I.     Standards of Review

## A.     Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

## B.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Twombly* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

C.     Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110) (additional

quotation marks omitted)).

**II. Analysis**

Defendants argue that they are entitled to both Eleventh Amendment and qualified immunities, and that Plaintiff has failed to allege Defendants' personal participation in the challenged conduct and failed to state claims for compensatory damages. The Court will analyze each stated defense in turn.

A.    Eleventh Amendment Immunity

Defendants contend that the Eleventh Amendment precludes this Court from hearing Plaintiff's claims to the extent they are brought against Defendants in their official capacities.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991); *see also Hunt v. Colo. Dep't of Corr.,* 271 F. App'x 778 (10th Cir. 2008) (CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity from Section 1983 claims). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. University of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, the Court agrees with the Plaintiff that the Defendants are not necessarily immune under the Eleventh Amendment for any prospective injunctive relief he seeks through this action, and that the action should not be dismissed in its entirety pursuant to the Eleventh Amendment since he brings claims against the Defendants personally. At the same time, to the extent that Plaintiff were to assert claims for money damages against the Defendants in their official capacities, such claims would be barred by the Eleventh Amendment. However, the Plaintiff concedes that he does *not* assert claims against the Defendants in their official capacities. Docket #33 at 3. Based upon this concession alone,[3] the Court recommends that, to the extent any claims for money damages may be construed as brought against Defendants in their official capacities, the motion to dismiss be **granted**.

B.      Qualified Immunity/Personal Participation

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities, because the Plaintiff has failed to allege plausibly that they personally participated in the challenged conduct and, thus, failed to state claims for First Amendment violations.

---

[3]Notably, the Defendants make no further argument in their reply brief regarding their Eleventh Amendment immunity defense, presumably based upon Plaintiff's concession.

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for each claim alleged against the Defendants, the Court will examine first whether the Plaintiff has alleged sufficient facts to demonstrate that the Defendants participated in the alleged violations of his constitutional or statutory rights.

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that each Defendant caused the deprivation of a federal right. *See Kentucky v. Graham,* 473 U.S.

159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each Defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993). A defendant may not be held liable on a theory of respondeat superior. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *McKee v. Heggy,* 703 F.2d 479, 483 (10th Cir. 1983).

That is, a defendant may not be held liable merely because of his or her supervisory position. *See Kite v. Kelley,* 546 F.2d 334, 336-38 (10th Cir. 1976) ("federal officer may not be held monetarily liable for acts of his subordinates resulting in the deprivation of constitutional rights"). To establish individual supervisory liability, a plaintiff must establish a "deliberate, intentional act" by a supervisor such that there is a "sufficient causal connection" between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corr.,* 455 F.3d 1146, 1151 (10th Cir. 2006). Mere negligence is not sufficient to establish liability. *Id.* Rather, a plaintiff must show active participation or acquiescence through personal participation, exercise of control or direction, failure to supervise, or tacit authorization of the offending acts. *Id.* at 1152-53. Thus, if a warden is responsible for proper management of a jail, the warden may be accountable if he "knew or should have known of the misconduct, and yet failed to prevent future harm." *See Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988) (citations omitted).

However, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) ("Lomholt failed to state First Amendment claims ... because defendants' denial of his grievances did not state a substantive constitutional claim")).

1. *Associate Warden Allen*

Plaintiff alleges that Associate Warden Allen became aware of the denials of his photographs, calendar and educational materials through Step 2 of the prison grievance process and "failed to intervene in the illegal acts of his subordinates." Docket #1 at 9-10. Plaintiff specifically states that "Defendant Robert Allen falsely reports in his grievance response that he completed an 'investigation' into the matter and found that 'staff has followed proper policy and procedure.'" *Id.* at 9. In citing Second Circuit opinions, Plaintiff argues that Allen, as a supervisory official, learned of the violation through Plaintiff's appeal and failed to "remedy the wrong." Docket #33 at 6 (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) and *United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975)).

To the extent that these opinions may be read to render liable supervisory officials who become aware of alleged constitutional violations through a grievance process and deny the grievance, the Court finds the opinions contrary to the Tenth Circuit's binding opinion in *Gallagher, supra.* Here, Plaintiff alleges nothing more than that Allen "failed to remedy the wrong" by denying his Step 2 grievance.[4] Therefore, pursuant to *Gallagher*, the Court finds that Plaintiff fails to allege Allen's personal participation in the alleged deprivation of his photographs and calendar; thus, Plaintiff fails to state a constitutional violation and Allen is entitled to qualified immunity. Consequently, this Court recommends that the District Court **grant** the motion to dismiss Plaintiff's First Amendment claim against Allen.

---

[4]The Plaintiff does not contend, and the Court does not find, that Plaintiff's concomitant allegation that Associate Warden Allen's response to the grievance was different than another individual's response to the same complaint states an independent constitutional violation.

2.    *Executive Director Zavares*

Plaintiff alleges that, during Step 3 of the grievance process, a "grievance officer" informed him through a written order that "relief has been granted by the Executive Director of the Colorado Department of Corrections" in the form of $1.00 reimbursement for each of the eight "commercial" photographs allegedly destroyed. Plaintiff contends that Zavares came to the wrong conclusion and granted insufficient relief in that there were 40 photographs that did not come from a commercial vendor but, rather, from his family. Moreover, Plaintiff asserts that Zavares failed to address the confiscation of the calendar and educational materials in his order.

Defendants argue Plaintiff's allegations merely reflect that a Step 3 grievance officer granted Plaintiff relief in the name of the Executive Director and, therefore, Plaintiff has failed to allege Zavares' personal participation in the alleged First Amendment violations. With respect to the calendar and educational materials, the Court finds that Plaintiff fails to allege Zavares' personal participation pursuant to *Gallagher, supra*, and that Zavares is entitled to qualified immunity on this claim.

With respect to the photographs, however, the Court does not necessarily agree with Defendants that *Gallagher* applies and that Zavares had no participation whatsoever in the challenged conduct; Zavares made conclusions and granted relief for the destruction of the photographs in an "Order of the Executive Director," which was separate from the grievance officer's correspondence. However, the Court finds that Plaintiff fails to state a First Amendment claim for relief against Zavares. The Plaintiff's case is governed by the Prison Litigation Reform Act (PLRA).[5] Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court "shall dismiss the case at any

_____

[5]*See* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion ... dismiss any action brought with respect to prison conditions under section 1983 of this title ... by a prisoner

time if the court determines that" the action "fails to state a claim on which relief may be granted." *See Elliott v. Cummings*, 49 F. App'x 220, 224 (10th Cir. 2002) (unpublished) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

Mail can be a medium of free speech and, therefore, interference with it may give rise to claims under the First Amendment. *See City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 427 (1993). The First Amendment protects a prisoner's right to receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Thus, to state a claim that Defendants violated his First Amendment free speech rights, the Plaintiff must allege that Defendants either (1) censored his legal mail, (2) failed to deliver his legal mail, (3) interfered with protected communications by stripping those protected communications of their confidentiality, or (4) chilled or inhibited his ability to speak openly with his attorney. *Villabona-Alvarado v. Rios*, 07-01937-MSK, 2009 WL 723308, *3 (D. Colo. Mar. 18, 2009); *see also Bedford v. Sharp,* 120 F.3d 270, 1997 WL 413166, *1 (10th Cir. July 23, 1997) (unpublished); *Jones v. Brown,* 461 F.3d 353 (3d Cir. 2006); *Al-Amin v. Smith,* 511 F.3d 1317, 1334 (11th Cir. 2008).

Here, Plaintiff's allegations that Zavares came to an incorrect conclusion and granted him insufficient relief[6] for destruction of the photographs do not demonstrate that Zavares censored, confiscated, or destroyed Plaintiff's mail, or otherwise interfered with confidential and/or attorney-client communications. Therefore, exercising jurisdiction and discretion under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court recommends that the District Court **grant** the motion to dismiss

---

confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief from a defendant who is immune from such relief.")

[6]The Court makes no findings as to any other defenses Zavares may have to this allegation, which were not raised by Defendants in the motion to dismiss.

Plaintiff's First Amendment claim against Zavares for failure to state a claim.

3.    *Warden Jones*

Plaintiff alleges that Warden Jones "signed into operation" both an "Implementation Adjustment 300-38, Section IV.7." and an "Operational Memorandum  650-1" under which the Plaintiff's "rights to free speech, correspondence and due process rights were violated."  He claims that the mailroom relied on these policies to restrict his receipt of the paralegal correspondence course materials by mail.  Docket #1 at 15.  In addition, Plaintiff contends that Warden Jones applied CDOC Administrative Regulation 850-6 unconstitutionally by concluding that Plaintiff was not permitted to receive the photographs and calendar from outside vendors (or family), but that such photographs and calendars must be purchased through the facility's canteen.  Defendant argues that Plaintiff's allegations merely reflect that Warden Jones "responded to an informal request" by the Plaintiff and do not demonstrate the requisite personal participation.

First, the Court agrees with Defendants that the allegations regarding Jones' response to Plaintiff's "informal request," which, apparently, was the first step in the CDOC grievance process (see docket # 1 at 16), simply relate to the denial of a grievance and do not adequately allege a factual basis to support an affirmative link between the warden and the alleged First Amendment violation.  *See Gallagher*, 587 F.3d at 1069.  The Court finds that Jones is entitled to qualified immunity on this claim for failure to state a constitutional violation.

With respect to the Plaintiff's allegations regarding the "implementation adjustment" and "operational memorandum" allegedly "signed into operation" by Warden Jones, the Court finds that such allegations may be liberally construed as a challenge to the constitutionality of these policies.[7]

---

[7]At this stage of the litigation addressing the within motion to dismiss, the Court does not have the ability to review the "policies" described by Plaintiff and, thus, makes no determination as

As the warden of the facility implementing these policies, Jones may be sued in her official capacity for a claim that seeks declaratory and prospective injunctive relief for the enforcement and/or implementation of an alleged unconstitutional policy.[8] *See Ex parte Young,* 209 U.S. 123, 159-60 (1908) (officials, named as defendants in a suit to enjoin the enforcement of an allegedly unconstitutional law, must by virtue of their offices have some connection with the enforcement of the law); *see also New Hampshire Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir. 1996) ("when a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it"). However, as stated above, the Plaintiff concedes that he brings no claims against the Defendants in their official capacities. Therefore, the Court must determine whether Warden Jones may be sued in her individual capacity for implementing policies alleged to have violated the First Amendment.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). In situations where an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation, her exercise of control or direction, or her failure to supervise, the supervisor may be personally liable. *Id.* (citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). The establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's "affirmative link" to the constitutional violation. *Davis v. City of Aurora*, – F. Supp. 2d –, 2010 WL 1348450, *17 (D. Colo. Mar. 31, 2010) (citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)). "Therefore,

---

to the content or "constitutionality" of such policies.

[8]The Court notes that Plaintiff seeks a declaration that Defendants' acts violated Plaintiff's constitutional rights and "a preliminary and permanent injunction ordering Defendants ... Jones ... to stop the rejection ... of educational correspondence courses." Docket #1 at 15, 19.

where an official with policymaking authority creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application." *Id.*; *see also Williams*, 781 F.2d at 323 ("[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue") (citations omitted).

Based on the foregoing and taking the Plaintiff's allegations as true, the Court finds that Plaintiff has stated a plausible First Amendment claim that Warden Jones promulgated policies resulting in an alleged failure to deliver mail. Consequently, the Court recommends that the District Court **deny** the motion to dismiss Plaintiff's First Amendment claim against Warden Jones regarding the "implementation adjustment" and "operational memorandum," but **grant** the motion to dismiss Plaintiff's First Amendment claim regarding application of CDOC Administrative Regulation 850-6 in the denial of his grievance.

C.     Compensatory Damages

Plaintiff seeks relief for "compensatory damages in the amount of $4,000 against each defendant." Docket #1 at 19. Defendant argues that to the extent Plaintiff seeks compensatory damages for "pain and suffering," any claim he makes for mental and emotional distress is barred by the PLRA due to his failure to show a physical injury. Plaintiff counters that "he does not claim mental or emotional damages" [docket #33 at 10], but contends that he is entitled to seek nominal and punitive damages, as well as damages for loss of property. *Id.* at 11.

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted. The underlying substantive violation ... should not be divorced from the resulting injury, such as "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e). The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.

*Searles v. VanBebber,* 251 F.3d 869, 876 (10th Cir. 2001) (citation omitted).

Through his briefing on the motion, Plaintiff confirms that he makes no claims for mental or emotional injuries. The Court agrees that any claim for compensatory damages for mental or emotional injury fails as a matter of law pursuant to the PLRA. Under existing precedent, however, any claims for injunctive relief, nominal damages or punitive damages would survive. *Id.* at 878-79; *see also Boles v. Neet*, 402 F. Supp. 2d 1237, 1244-45 (D. Colo. 2005). Thus, the Court recommends that, to the extent the District Court denies the motion to dismiss any of Plaintiff's claims and should the Plaintiff seek relief for mental or emotional injuries as a result of Defendants' conduct alleged in those claims, the District Court **grant** the motion to dismiss Plaintiff's request for recovery of such injuries.

## MOTION TO AMEND

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may dismiss " *sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [her] to amend [her] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir.

199)).

However, here, the Plaintiff filed his motion to amend the Complaint during the pendency of a ruling on the motion to dismiss. Rule 15 of the Federal Rules of Civil Procedure provides that, following a 21-day period for service of the complaint or service of a responsive pleading or Rule 12 motion, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). The grant or denial of leave is committed to the discretion of the district court. *See Duncan v. Manager, Dep't of Safety, City and County of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005). The Court must heed Rule 15's mandate that it "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); *Foman,* 371 U.S. at 182; *Duncan,* 397 F.3d at 1315. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman,* 371 U.S. at 182. Leave to amend should be refused "only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan,* 397 F.3d at 1315; *see also Foman,* 371 U.S. at 182.

Through his motion, the Plaintiff seeks to add a First Amendment claim against an additional Defendant, Jim Brown. Moreover, the proposed First Amended Complaint includes not only Plaintiff's original First Amendment claims based upon free speech, but also claims for violations of the Plaintiff's right to redress grievances against the original Defendants. It appears that Plaintiff has also clarified some facts he may have learned through discovery.

Defendants argue that Plaintiff's amended claims against Zavares, Allen, Barr and Jones are futile for Plaintiff's failure to allege personal participation. In addition, Defendants contend Plaintiff fails to state the proper claims for destruction of his property. Plaintiff responds that he has, in fact,

alleged personal participation by all Defendants and that he originally tried to bring the "proper" claims for due process violations for destruction of his property, but the Court dismissed the claims during initial review.

I.      **Amended Claims Against Zavares, Allen and Jones**

As set forth above, the Court has recommended that Plaintiff's claims against Zavares, Allen and, to some extent, Jones be dismissed for failure to state a claim with respect to their involvement in the grievance process. In the proposed First Amended Complaint, the Plaintiff clarifies that he challenges Allen's denial of his grievance in Step 2 of the process and Zavares' participation in Step 3 of the process, and restates his challenge to Jones' response to his informal request during Step 1 of the grievance process. Docket #40-1 at 9-11. Therefore, the Court finds nothing in these amended allegations that changes its analysis of Defendants' personal participation as challenged in the Motion to Dismiss. Consequently, the Court finds these amendments futile and subject to dismissal, and recommends that the District Court **deny the Motion to Amend** with respect to such claims against Zavares, Allen and Jones.

With respect to Plaintiff's claim that Jones promulgated policies resulting in an alleged failure to deliver mail, the amended allegations are essentially the same as in the original Complaint. Therefore, the Court stands on its recommendation to deny the motion to dismiss such claims and recommends that the District Court **grant** the Plaintiff leave to file his amended allegations against Jones regarding the "implementation adjustment" and "operational memorandum" allegedly "signed into operation" by Warden Jones.

Finally, although the Plaintiff adds claims for violations of his right to "petition the government for the redress of grievances," he asserts no factual allegations as to how Defendants interfered with his ability to file grievances or access the courts regarding the prison officials' alleged

conduct. *See Iqbal*, 129 S. Ct. at 1949 ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). In fact, the amended allegations reflect that Plaintiff proceeded through Steps 1, 2, and 3 of the grievance process regarding withheld or destroyed mail. Therefore, the Court finds such claims, as amended, subject to dismissal for failure to state a claim and recommends that the District Court **deny** Plaintiff's Motion to Amend to add claims for alleged violations of Plaintiff's right to petition the government.

## II.    Amended Claims Against Barr

Unlike the original Complaint, Plaintiff's amended allegations concerning Defendant Barr reflect Barr's participation in (or, denial of) Step 1 of the grievance process regarding the alleged failure to deliver Plaintiff's personal mail. As such, the Court finds that Plaintiff fails to allege Barr's personal participation in the alleged constitutional violations pursuant to *Gallagher v. Shelton*, *supra*, and that such amended claims are subject to dismissal. Accordingly, the Court recommends that the District Court **deny** the Motion to Amend regarding Plaintiff's First Amendment claims against Defendant Barr.[9]

## III.   New Claims Against Brown

Plaintiff alleges that Defendant Brown, on two separate occasions, rejected (by failing to deliver to Plaintiff), then destroyed family photographs and a calendar mailed to the Plaintiff at the prison facility. Plaintiff claims violations of his rights to free speech under the First Amendment.

Defendant argues that Plaintiff's claims for destruction of personal property are more properly brought under the Due Process Clause; however, Defendant contends, the Plaintiff may not bring such claims pursuant to 42 U.S.C. § 1983 since he has an available remedy under state law.

---

[9]The Court notes that, as set forth above, Barr filed an Answer to the original Complaint; the Motion to Dismiss was filed by Defendants Zavares, Allen and Jones.

Plaintiff counters that he did, in fact, bring his claims for destruction of property pursuant to § 1983 in his original Complaint; however, upon initial review, the Court dismissed those claims for the very reason argued by the Defendant here. *See* docket #2.

The Court rejects Defendants' argument and finds that Plaintiff's claims against Brown, as alleged in the proposed First Amended Complaint, state plausible claims for violation of Plaintiff's First Amendment right to receive mail while incarcerated. *See Thornburgh*, 490 U.S. at 407. The allegations reflect that Brown rejected delivery of the photographs and calendar and, thereafter, caused them to be destroyed. Consequently, in the interests of justice, the Court recommends that the District Court **grant** Plaintiff's Motion to Amend to allow the Plaintiff to allege a First Amendment claim against Defendant Brown.

## CONCLUSION

Based upon the foregoing, this Court respectfully RECOMMENDS that the Defendants' Motion to Dismiss [filed January 25, 2010; docket #16] be **GRANTED IN PART AND DENIED IN PART** and the Plaintiff's Motion for Leave to File Amended Complaint [May 6, 2010; docket #40] be **GRANTED IN PART AND DENIED IN PART** as follows:

1. **Grant** the motion to dismiss Plaintiff's claims for compensatory damages for mental or emotional injuries, if any;

2. **Grant** the motion to dismiss Plaintiff's claims against Defendants in their official capacities, if any;

3. **Grant** the motion to dismiss Plaintiff's claims against Defendants Allen and Zavares in their individual capacities;

4. **Grant** the motion to dismiss Plaintiff's claim against Defendant Jones regarding application of CDOC Administrative Regulation 850-6, but **deny** the motion to

dismiss Plaintiff's claim against Jones regarding implementation of the "operational memorandum" and "implementation adjustment";

5.       **Deny** the motion to amend Plaintiff's claims against Defendants Barr, Allen and Zavares;

6.       **Deny** the motion to amend Plaintiff's claim against Defendant Jones regarding application of CDOC Administrative Regulation 850-6, but **grant** the motion to amend Plaintiff's claim against Jones regarding implementation of the "operational memorandum" and "implementation adjustment"; and

7.       **Grant** the motion to amend to add Plaintiff's claim against Defendant Brown.

Dated this 14th day of June, 2010, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge